SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| INV ACCELERATOR, LLC, | Index No. 650784/2019 |
| Plaintiff, | **SUPPLEMENTAL SUMMONS** |
| -against- | Plaintiff designates New York County as the place of trial.  The basis of venue is CPLR § 503. |
| VESTED INTEREST CO. D/B/A GOLDBEAN, MX TECHNOLOGIES, INC. and JANE BARRATT, | Date Index Number Purchased: February 7, 2019 |
| Defendants. | Date of Filing of Original Summons: February 7, 2019 |

TO:   Jane Barratt
      c/o MX Technologies, Inc.
      3401 North Thanksgiving Way, Suite 500
      Lehi, UT 84043

YOU ARE HEREBY SUMMONED to answer the claims contained in the Complaint filed by plaintiff INV Accelerator, LLC ("Plaintiff") in this action and to serve a copy of your answer on the undersigned counsel for Plaintiff within 20 days after the service of this Supplemental Summons, exclusive of the day of service, or within 30 days after the service is complete if this Supplemental Summons is not personally delivered to you within the State of New York.  In case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded by Plaintiff in the Complaint.

INDEX NO. 650784/2019
NYSCEF DOC. NO. 9   Case 1:19-cv-02276-AJN   Document 15   Filed 03/29/19   Page 2 of 11   RECEIVED NYSCEF: 03/29/2019

2

Dated: New York, New York
March 29, 2019

OLSHAN FROME WOLOSKY LLP

By:   */s/ Katelyn J. Patton*
     Renée M. Zaytsev
     Katelyn J. Patton
     *Attorneys for Plaintiff*
     *INV Accelerator, LLC*
     1325 Avenue of the Americas
     New York, New York 10019
     (212) 451-2300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

INV ACCELERATOR, LLC,

                              Plaintiff,

            -against-

VESTED INTEREST CO. D/B/A GOLDBEAN,
MX TECHNOLOGIES, INC. and JANE
BARRATT,

                              Defendants.

Index No. 650784/2019

**COMPLAINT**

---

Plaintiff INV Accelerator, LLC ("INV" or "Plaintiff"), by its attorneys, Olshan Frome Wolosky LLP, for its Complaint against Defendants Vested Interest Co. d/b/a GoldBean ("GoldBean"), MX Technologies, Inc. ("MX") and Jane Barratt (collectively, "Defendants"), states as follows:

Nature of the Action

1.      This action arises from Defendants' breach of and tortious interference with an agreement through which Plaintiff agreed to host Defendant GoldBean in its Accelerator Program, providing GoldBean with a cash allocation, mentorship and product/service exposure in return for GoldBean's issuance of a simple agreement for future equity. Despite the occurrence of qualifying events, Plaintiff never received the equity or cash payments it is entitled to. Further, Defendants MX and Barratt improperly caused GoldBean to breach its agreement with Plaintiff by purporting to cancel an anticipated acquisition that would have triggered Plaintiff's entitlement to consideration. Instead, the acquisition was re-structured and occurred de facto when MX hired GoldBean's founder and former CEO, Barratt, who then transferred GoldBean's assets to MX,

leaving GoldBean a defunct shell. As a result of Defendants' behavior, Plaintiff has been wrongfully deprived of at least $200,000, which it seeks in this action.

## The Parties

2. Plaintiff INV Accelerator, LLC is a New York limited liability company with its principal place of business in New York, New York. Plaintiff maintains a program through which it works with start-up companies for a fixed duration of time with an objective of developing and enhancing their products and/or services (the "Accelerator Program").

3. Upon information and belief, Defendant Vested Interest Co. d/b/a GoldBean is a Delaware corporation with its principal place of business in New York.

4. Upon information and belief, Defendant MX Technologies, Inc. is a Delaware corporation with its principal place of business in Utah.

5. Upon information and belief, Defendant Jane Barratt is a citizen of Utah. She is GoldBean's founder and former CEO.

## The Participation Agreement

6. In an executed agreement dated April 11, 2016 (the "Participation Agreement"), INV agreed to host GoldBean in the Accelerator Program for a six-month term (the "Participation Term"). INV agreed to provide GoldBean with, among other things, mentorship, a cash allocation for travel-related expenses and product/service exposure through INV's and its affiliates' media networks.

7. Pursuant to the Participation Agreement, GoldBean agreed to, among other things, issue to INV and other sponsors during the Participation Term a simple agreement for future equity ("SAFE") in an aggregate amount of $500,000, which entitled INV to equity or cash payments upon the occurrence of certain events. The parties agreed that the SAFE would "be on reasonable and customary terms and documentation provided by [INV]."

8. Both INV and GoldBean understood that the "reasonable and customary terms" would be those set forth in the industry-standard model SAFE developed by Y Combinator, one of the top U.S. accelerators, in 2013 (the "Model SAFE"). Since its development, the Model SAFE has been used by countless start-up companies as the main instrument for early-stage fundraising. INV would not have entered into the Participation Agreement unless GoldBean agreed to provide it with a SAFE pursuant to the "reasonable and customary terms" set forth in the Model SAFE.

9. On May 17, 2016, INV delivered a draft SAFE to GoldBean that included the following terms, taken from the Model SAFE and supplemented by the Participation Agreement:

    a. GoldBean will automatically issue to INV a certain number of equity securities upon any Equity Financing that occurs before the expiration or termination of the SAFE, with Equity Financing defined as "a bona fide transaction with the principal purpose of raising capital, pursuant to which [GoldBean] issues and sells Capital Stock at a fixed pre-money valuation with an aggregate sales price of not less than $20,000,000."

    b. At any time before the expiration or termination of the SAFE, INV may convert all or a portion of the Principal Amount ($200,000) into equity securities at the Conversion Price (defined therein).

    c. Upon notice of a Liquidity Event, INV may either (i) receive a cash payment equal to the Principal Amount ($200,000) or (ii) receive a number of shares of GoldBean common stock equal to the Principal Amount ($200,000) divided by the Liquidity Price (defined therein). A Liquidity Event is defined in the SAFE to mean an initial public offering or Change of Control, which includes by definition "any

3

    reorganization, merger or consolidation of [GoldBean]" and "a sale, lease or other disposition of all or substantially all of the consolidated assets of [GoldBean]."

  d. If there is a Dissolution Event before the expiration or termination of the SAFE, GoldBean will pay to INV the Principal Amount ($200,000) immediately prior to, or concurrent with, the consummation of the Dissolution Event. A Dissolution Event is defined in the SAFE to include (i) a voluntary termination of operations, (ii) a general assignment for the benefit of GoldBean's creditors and (iii) any other liquidation, dissolution or winding up of GoldBean (excluding a Liquidity Event), whether voluntary or involuntary.

  10. GoldBean never raised any objection and assented to the terms of the SAFE.

The Acquisition

  11. In the afternoon of Friday, September 7, 2018, Barrett sent to INV an "official" press release, set for distribution at 8:00 the following Monday morning, announcing MX's acquisition of GoldBean (the "Acquisition"). As part of the Acquisition, the release announced, Barratt would join the MX executive team as Chief Advocacy Officer.

  12. On September 9, 2018, pursuant to Section 1(c)(ii) of the SAFE, INV formally notified GoldBean of its election, in connection with the Acquisition, "to receive the greater in value of (A) a cash payment equal to $200,000, or (B) a number of shares of [GoldBean's] common stock equal to $200,000 divided by the Liquidity Price (as defined in the SAFE)." INV provided a copy of this notice to MX.

  13. Upon information and belief, in an effort to avoid providing the required equity and/or cash payments to INV, GoldBean and MX purported to "cancel" the Acquisition. In reality, the Acquisition was not canceled. On October 22, 2018, MX publicly announced that it had hired

Barratt as its Chief Advocacy Officer. Upon information and belief, Barratt transferred GoldBean's assets, including its intellectual property and customer information, to MX, which has been exploiting such assets since that time. GoldBean was left a defunct shell that, according to its website, "is no longer taking clients or offering investment advice."

14. The transaction was an "acquisition" in everything but name. Indeed, MX's press release announcing Barratt's hiring was nearly identical to the draft it had prepared regarding the Acquisition, with the word "GoldBean" simply replaced by the word "Jane" [Barratt].

15. To date, despite INV's demands, INV has not received any of the consideration owed to it under the SAFE.

## FIRST CAUSE OF ACTION
(<u>Breach of Contract – Against GoldBean</u>)

16. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

17. Plaintiff and GoldBean entered into a valid and enforceable written contract pursuant to which Plaintiff agreed to host GoldBean in the Accelerator Program and GoldBean, in return, agreed to issue to Plaintiff a SAFE which entitled Plaintiff to equity or cash payments upon the occurrence of certain events. Specifically, pursuant to the Participation Agreement, GoldBean agreed to deliver to Plaintiff a SAFE "on reasonable and customary terms," which all parties understood to be the terms set forth in the Model SAFE.

18. Plaintiff fully performed under the Participation Agreement, and GoldBean accepted the benefits of the Participation Agreement and Plaintiff's Accelerator Program to help build its business.

19. GoldBean has materially breached its obligations under the Participation Agreement. Pursuant to the Participation Agreement, GoldBean was required to deliver to Plaintiff

a SAFE that, among other things, entitled Plaintiff to receive a cash payment equal to $200,000 upon either a "Liquidity Event" or a "Dissolution Event." A Liquidity Event is defined in the SAFE to mean an initial public offering or Change of Control, which includes by definition "any reorganization, merger or consolidation of [GoldBean]" and "a sale, lease or other disposition of all or substantially all of the consolidated assets of [GoldBean]." A Dissolution Event is defined in the SAFE to include (i) a voluntary termination of operations, (ii) a general assignment for the benefit of GoldBean's creditors and (iii) any other liquidation, dissolution or winding up of GoldBean (excluding a Liquidity Event), whether voluntary or involuntary.

20. In or around October 2018, "a sale, lease or other disposition of all or substantially all of the consolidated assets of [GoldBean]" occurred when MX hired Barratt as its Chief Advocacy Officer, who then transferred GoldBean's assets, including its intellectual property and customer information, to MX. A voluntary termination of operations or other dissolution or winding up of GoldBean occurred when, as a result of such transaction, GoldBean was left a defunct shell that "is no longer taking clients or offering investment advice." Therefore, a Liquidity Event and/or a Dissolution Event has occurred.

21. Despite Plaintiff's demands, GoldBean has failed to comply with its contractual obligations.

22. As a direct result of GoldBean's breach of the Participation Agreement, Plaintiff has been damaged in an amount to be determined at trial but in no event less than $200,000.

### SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against GoldBean)

23. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

24. New York law implies a covenant of good faith and fair dealing in all contracts, including the Participation Agreement.

25. Plaintiff fully performed under the Participation Agreement.

26. An implied term of the Participation Agreement is that GoldBean would not abruptly cease its operations and instead would diligently and in good faith seek to build its business and raise capital.

27. GoldBean breached this implied term of the Participation Agreement when Barratt abandoned the company and transferred its assets to MX, leaving GoldBean a defunct shell with no operations and no future.

28. Due to GoldBean's breach of the implied covenant of good faith and fair dealing, Plaintiff was damaged in an amount to be determined at trial but in no event less than $200,000.

### THIRD CAUSE OF ACTION
(Unjust Enrichment – Against All Defendants)

29. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

30. Plaintiff, pursuant to its Participation Agreement with GoldBean, performed valuable services in good faith, which services were accepted by GoldBean without objection.

31. Plaintiff was not compensated for its services. Instead, GoldBean's founder and former CEO abandoned the company, transferred its assets to MX, and has disclaimed any obligation to Plaintiff.

32. Defendants were enriched at Plaintiff's expense: GoldBean received the benefits of the Participation Agreement and Plaintiff's Accelerator Program to help build its business; MX received such benefits when it de facto acquired GoldBean; and, upon information and belief, Barratt received a lucrative employment agreement with MX.

33. Equity and good conscience militate against Defendants' retaining the services and other benefits they gained.

34. As a result of the foregoing, Defendants have been unjustly enriched at the expense and to the detriment of Plaintiff, and Plaintiff is entitled to an award in an amount to be determined at trial but in no event less than $200,000 for services rendered.

## FOURTH CAUSE OF ACTION
(Tortious Interference with Contract – Against MX and Barratt)

35. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

36. The Participation Agreement was a valid, enforceable written contract between Plaintiff and GoldBean.

37. MX and Barratt had actual knowledge of the Participation Agreement.

38. MX and Barratt improperly caused GoldBean to breach the Participation Agreement when they purported to "cancel" the anticipated Acquisition and MX hired Barratt as its Chief Advocacy Officer, who then transferred GoldBean's assets to MX, leaving GoldBean a defunct shell. There was no business purpose for re-structuring the transaction this way. Instead, MX and Barratt acted solely to prevent Plaintiff from receiving the equity and/or cash payments it was entitled to under the Participation Agreement.

39. Due to MX's and Barratt's tortious interference, Plaintiff was damaged in an amount to be determined at trial but in no event less than $200,000.

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants in the amount of at least $200,000, together with attorney's fees and costs incurred by Plaintiff in connection with this action and such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 29, 2019

                    OLSHAN FROME WOLOSKY LLP

By: */s/ Katelyn J. Patton*
     Renée M. Zaytsev
     Katelyn J. Patton
     *Attorneys for Plaintiff*
     *INV Accelerator, LLC*
     1325 Avenue of the Americas
     New York, New York 10019
     (212) 451-2300